UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

HICKS RICKY REED                                                          PLAINTIFF

V.                                              CIVIL ACTION NO. 3:20-CV-49-KHJ-FKB

NISSAN NORTH AMERICA, INC.                                      DEFENDANT

ORDER

Before the Court is Defendant Nissan North America, Inc.'s Motion for

Summary Judgment [44]. For these reasons, the Court grants Nissan's motion as to

Reed's age and race discrimination claims and denies Nissan's motion as to Reed's

disability discrimination and retaliation claims.

I.      Facts and Procedural History

Plaintiff Hicks Ricky Reed started working for Nissan's plant in Canton,

Mississippi in 2004 as a production supervisor over the trim and chassis

department. [48] at 2. About eight years into his employment, Reed collapsed at

work, was rushed to the hospital, and underwent surgery to implant a cardiac

defibrillator. [1], ¶ 6. Reed went on medical leave for the next year and a half and

returned to work in June 2014.[1]

---

[1] Reed alleges that, although he was "released to return to work in January 2013 with only
a day-shift restriction," Nissan required him to undergo "fitness for duty" exams as a pre-
condition to returning. *Id.*, ¶¶ 7-22. Nissan's on-site physician service did not release Reed
to return to work until June 2014. *Id.*

When Reed returned to work, Nissan placed him in another supervisor position over the "kitting area." Reed Dep. [45-1] at 172:1-20. This role required Reed to "walk around that area" to oversee technicians assembling various kit components. *Id.* at 174:1-175:3. Reed remained a supervisor over the kitting area for a few months before Nissan transferred him to a "temporary, light duty assignment on the New Model Group" ("NMG"). [48] at 3.

When Nissan first assigned Reed to the NMG, his primary job duty involved completing "a lot of paperwork," tracking and reporting defects, and "monitoring the process" of production. *Id.*; [45-3] at 25:5-26:1. Reed's manager, Gary Blissett, testified that these paperwork-heavy roles were typical at the beginning of any new model project, but as the project progressed, NMG trials required "more hands-on training and being out on the floor." [45-3] at 25:5-26:1. Reed remained in this "temporary, light duty" role until June 2016, when Blissett informed him he would be expected to "move into . . . a [new] supervisor opening" in the engine area of the truck trim and chassis line. *Id.* at 29:2-11 (explaining Reed's initial focus on paperwork "really wasn't needed anymore," so employees were rotated on and off that team as necessary). According to Blissett, Reed's new role would not have required him to be standing "out on the [production] line full-time," but he still would have been walking "on the floor to manage [and] to supervise quite a bit[.]" [45-3] at 25:5-26:1.

Reed informed Blissett he could not take the new supervisor job because of his medical conditions. Reed testified he believed the new position would have

required him to work in "highly magnetic areas" that he "shouldn't have been working in . . . because of [his] heart." [45-1] at 225:17-22. Along with his heart condition, Reed told Blissett that restrictions involving the "problems with his leg" would prevent him from filling the new supervisor role, as it would require "continuous[] walking."[2] *Id.* at 224:8-226:15.

Nissan, however, advised Reed to "report to [his] new position" on July 11, 2016, stating it "believe[d] that the position should be within [his heart-related] restrictions" against work around magnetic devices. [45-4] at Ex. 24. Nissan told Reed if he wished to present "any new restrictions" from his doctor, such as walking limitations, he should do so after his doctor visit on July 13, 2016, "so that [Nissan could] discuss with [him] any accommodations to enable [him] to perform [his] new job assignment." *Id.* Nissan explained if Reed was "not able to perform his duties as stated . . . he would have to go out on leave." *Id.* at 71:14-21. Reed therefore went on temporary FMLA leave while he collected documentation on his medical limitations. *Id.*

Reed visited Nissan's on-site medical provider a week later for evaluation. With him, Reed brought a note from Dr. James O'Mara at Mississippi Sports Medicine and Orthopedic Center dated June 30, 2016, stating he could "return to work at that time with the restrictions of light duty only (no standing for extended periods of time)." *Id.* at Ex. 19. Dr. O'Mara's note did not quantify an acceptable time limit for Reed to stand or walk, so Reed returned to Dr. O'Mara a few weeks

---

[2] But Reed testified that as of his meeting with Blissett in June 2016, his doctor had not actually limited his walking. *Id.* at 226:16-19.

later and obtained a form stating he could "stand for 15 minutes out of every hour." *Id.*; [45-1] at Ex. 6. And as Nissan requested, Reed also submitted a report from his cardiology visit at the Jackson Heart Clinic. [45-1] at 5. The report noted Reed's hypertension and presence of a cardiac defibrillator but stated he was "asymptomatic" for cardiomyopathy and ventricular tachycardia; his defibrillator never needed to discharge; and that Reed "walk[ed] 3 to 4 days a week for 30 to 45 minutes" each time. *Id.*[3]

After clarifying that he believed he could not perform the new supervisor role because of his standing restriction, Reed requested Nissan place him in a different role as "Assistant Supervisor." [45] at 6. Nissan explained there was no such position, and Reed would either have to "perform his duties as Supervisor" or "go[] out on leave." [45-4] at 72:12-20; Ex. 24 ("If you continue to believe that you can't perform the new position because of your medical condition, we advised you that you could apply for short term disability[.]"). Nissan received a Job Placement Report showing Reed could not perform the essential functions of the new supervisor role given his medical restrictions, so Nissan placed Reed on medical leave in October 2016. [45-4] at 23; [45] at 7.

Reed testified he was "willing to work anywhere at a desk job" or "any job" that would not require him to stand or walk for more than his new 15-minutes-per-hour restriction. [45-1] at 262:4-16. Since there are "no supervisors" at Nissan with

---

[3] While Reed's cardiology report noted "Nissan is asking patient to do more physical activities," it did not mention any work restrictions or limit Reed's ability to walk or stand. *Id.*

4

"jobs that would have them at a desk during . . . the majority of the day," Nissan suggested Reed apply for various analyst positions. [45-4] at 84:6-25. Reed applied, but was not selected, for nine positions between February 2017 and June 2018. Nissan contacted Reed again in September 2018, after he had been on leave for about two years, requesting that Reed suggest "any positions [he] believe[d] fit within [his] restrictions." *Id.* at Ex. 25. Reed informed Nissan's human resources department that he had applied for several positions but still could not fill any role requiring "15 minutes standing" or "night duties." [48-8].

Reed then filed a charge of discrimination with the Equal Opportunity Employment Commission ("EEOC") alleging disability and age discrimination and retaliation, and the EEOC issued its Determination Letter and invitation for Nissan to participate in conciliation efforts. [48-5]. The parties could not come to an agreement. Reed therefore sued, bringing claims of disability discrimination and retaliation under the ADA, age discrimination under the ADEA,[4] and race discrimination under 42 U.S.C. § 1981. Nissan now moves for summary judgment as to all claims.

II.   Legal Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact issue is 'material' if its resolution could affect the outcome of the action." *Levy Gardens Partners 2007, L.P. v. Commw.*

---

[4] Reed was 61 years old when he filed his charge of discrimination with the EEOC.

*Land Title Ins. Co.*, 706 F.3d 622, 628 (5th Cir. 2013) (citation omitted). "An issue is 'genuine' if 'the evidence is such that a reasonable [factfinder] could return a verdict for the nonmoving party.'" *Jones v. United States*, 936 F.3d 318, 321 (5th Cir. 2019) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). In analyzing a motion for summary judgment, "the judge's function is not [her]self to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Klocke v. Watson*, 936 F.3d 240, 246 (5th Cir. 2019) (quoting *Anderson*, 477 U.S. at 249).

A party seeking to avoid summary judgment must set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(c). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. The Court views the evidence and draws reasonable inferences in the light most favorable to the nonmovant. *Duval v. N. Assur. Co. of Am.*, 722 F.3d 300, 303 (5th Cir. 2013).

III.   Analysis

Reed alleges discrimination and retaliation based on his disability in violation of the ADA, discrimination based on his race in violation of § 1981, and discrimination based on his age in violation of the ADEA. Nissan responds that Reed failed to administratively exhaust several allegations, but even if properly before this Court, he cannot show discrimination or retaliation as a matter of law. The Court will consider each argument in turn.

A.  Discrimination Under the ADA

Title I of the ADA covers employment discrimination based on disability. It provides that no covered employer may discriminate against "a qualified individual with a disability because of the disability of such individual" in any of the "terms, conditions [or] privileges of employment." 42 U.S.C. § 12112(a). To establish a prima facie discrimination claim under the ADA, Reed must prove: (1) he has a disability; (2) he was qualified for the job; and (3) he was subject to an adverse employment decision because of his disability — there was a "causal nexus," or "causal connection," between the adverse employment action and his disability. *Rodriguez v. Eli Lilly & Co.*, 820 F.3d 759, 765 (5th Cir. 2016) (citing *E.E.O.C. v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014)).

"If the employee establishes a prima facie case, the burden shifts to the employer to state a legitimate, non-retaliatory reason for its decision. After the employer states its reason, the burden shifts back to the employee to demonstrate that the employer's reason is actually a pretext for retaliation." *LeMaire v. Louisiana*, 480 F.3d 383, 388-89 (5th Cir. 2007) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973)).

Reed's factual allegations giving rise to his disability discrimination claim may be divided into three chronological categories: (1) events before and during Reed's medical leave in 2013-14; (2) Nissan's alleged failure to provide Reed with reasonable accommodations Reed between June 2016 and January 2017; and (3) Nissan's alleged failure to reassign Reed to vacant positions between February 2017

7

and June 2018. Because the analysis of the first category differs from that of the second two, the Court will address it separately.

    1.  Events Occurring in 2013-14

    Reed says after his defibrillator was implanted, his doctor released him to return to work in January 2013, but Nissan would not allow him to return until June 2014—subjecting him to lost income, benefits, and other damages. [1], ¶¶ 7-20. He alleges Nissan agreed to engage in formal mediation about those damages but "later reneged on its agreement." *Id.*, ¶ 22. Nissan responds that any allegations dating back to Reed's cardiac event in 2013-14 are time-barred. [45] at 10. The Court agrees.

    EEOC charges of discrimination must be "filed within one hundred and eighty days after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1). Reed filed his charge of discrimination on December 29, 2016, meaning any challenged discrimination must have occurred no earlier than July 2, 2016. Indeed, Reed's initial Charge of Discrimination shows July 18, 2016 was both the "earliest" and "latest" date the alleged discrimination took place. [45-1] at Ex. 11. Reed did, however, amend his charge that day and, while the factual allegations remain largely unchanged, the amendment lists January 2, 2013, as the earliest date of discrimination and marks the checkbox for "continuing action." [45-1] at Ex. 14.

    But the continuing violation doctrine does not save Reed's 2013-14 claims from being time-barred. Reed complains of "discrete acts that form the basis of [a]

traditional discrimination claim," *not* a "hostile work environment." *See Heath v. Bd. of Supervisors for S. Univ. & Agric. & Mech. Coll.*, 850 F.3d 731, 737 (5th Cir. 2017). Only hostile work environment claims are subject to the continuing violation doctrine; "claims alleging discrete acts are not." *Id.* (discussing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002)). Because Reed's amended charge describes discrete acts on specific dates, each allegation constitutes a separate employment practice that must be exhausted within the statutory 180-day period. Any allegations arising before July 2, 2016 are time-barred.

### 2. Nissan's Alleged Failure to Make Reasonable Accommodations and/or Reassign Reed to Vacant Positions

#### a. Administrative Exhaustion

Nissan contends Reed's allegation that he "made ongoing efforts to return to work since the June 2016 shutdown" is also barred for failure to exhaust his administrative remedies.[5] [45] at 12 (quoting [1], ¶¶ 26, 32-34). Nissan says Reed's "charge does not encompass this timeframe or include failure to hire as a type of alleged discrimination." *Id.*

This Court rejects Nissan's administrative exhaustion argument. Reed's amended charge does broadly state he "has not been allowed to return to work since the shutdown" in June 2016, and Nissan "has not . . . compensated [him] for his lost time from work or for lost benefits." [45-1] at Ex. 12, p. 4. Given this, it is

---

[5] Nissan concedes Reed properly exhausted his claim that Nissan failed to make reasonable accommodations for him between June 2016 and January 2017. [45] at 14. Nissan's administrative exhaustion argument therefore applies only to Reed's allegations of discrimination (*i.e.*, failure to reassign him to vacant positions) arising *after* Reed filed his charge of discrimination on December 29, 2016.

unsurprising that the EEOC extended its investigation into Reed's job applications between January 2017 and July 2018—all arising after Reed filed his charge of discrimination. Fifth Circuit precedent makes clear that the scope of an employment discrimination suit may "extend as far as, but no further than, the scope of the EEOC investigation which could reasonably grow out of the administrative charge." *Fine v. GAF Chem. Corp.*, 995 F.2d 576, 578 (5th Cir. 1993) (quoting *Terrell v. U.S. Pipe & Foundry Co.*, 644 F.2d 1112, 1123 (5th Cir. Unit B 1981)); *see also Simmons-Myers v. Caesars Ent. Corp.*, 515 Fed. App'x 269, 273 (5th Cir. 2013). Reed's charge on Nissan's alleged "failure to allow him to return to work" after the shutdown sufficiently "put Nissan on notice of the existence and nature of the charges against [it]." *Simmons-Myers*, 515 F. App'x at 273 (citing *Manning v. Chevron Chem. Co.*, 332 F.3d 874, 878 (5th Cir. 2003)).

Moreover, as to Nissan's contention that Reed's charge "does not include failure to hire as a type of alleged discrimination," it is immaterial that Reed does not specifically call Nissan's disallowing him to "return to work" a "failure to hire" claim in his Charge of Discrimination. A charging party's rights are not "cut off merely because he fails to articulate correctly the legal conclusion emanating from his factual allegations." *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 462 (5th Cir. 1970). Reed's claim that Nissan subjected him to disability discrimination by failing to reassign him to vacant positions is properly before this Court.

b.  Disability

Next, Nissan argues Reed cannot make out a prima facie discrimination case because he is not disabled. [45] at 14-15. According to Nissan, Reed's "standing restriction is not a disability" because Reed is not substantially "limited in his 'ability to perform' standing as compared to the general population." *Id.* at 16 (citing 29 C.F.R. § 1630.2(j)(1)(ii)). The term "disability," for purposes of the ADA, means an individual: (1) has "a physical or mental impairment that substantially limits one or more major life activities of such individual"; (2) has "a record of such an impairment"; or (3) is "regarded as having such an impairment." 42 U.S.C. § 12102(1). The ADA specifies a list of tasks which constitute "major life activities" for finding a substantial limitation, including, but not limited to, "walking," "standing," "lifting," "bending," and "working." 42 U.S.C. § 12102(2)(A).

Reed says the "doctor-recommended restriction against standing for more than 15 minutes substantially limits [his] 'major life activities' of working, walking, standing, and lifting." [48] at 9-10. While Nissan argues Reed's ability to "cycle[] on a stationary bicycle and low-impact elliptical . . . 3-4 times per week" shows he is "able to perform . . . standing and walking," [45] at 16, this Court finds Nissan's position unavailing. Riding a bicycle or elliptical does not require Reed to walk at all, much less to stand and walk for more than 15 minutes at a time. The Court therefore finds Reed has presented a genuine issue of material fact as to whether he is "disabled" under the ADA.

c.  Qualified Individual

Nissan alternatively argues Reed cannot meet the second element of his prima facie discrimination case—that he was qualified and able to perform the essential functions of the job. For purposes of the ADA, a "qualified individual" is one "who, with or without reasonable accommodation, can perform the essential functions of the employment position[.]" 42 U.S.C. § 12111(8); *E.E.O.C. v. LHC Grp., Inc.*, 773 F.3d 688, 697 (5th Cir. 2014) (citing *Turco v. Hoechst Celanese Corp.*, 101 F.3d 1090, 1093 (5th Cir. 1996) (per curiam). "Essential functions" are "fundamental job duties of the employment position the individual with a disability holds or desires." 29 C.F.R. § 1630.2. Relevant here, evidence of whether a task constitutes an "essential function" may include "the employer's judgment as to which functions are essential," "the amount of time spent on the job performing the function," and "the consequences of not requiring the incumbent to perform the function." *Id.*

Parties do not dispute that "standing" and "walking" are essential functions of Reed's role as a supervisor. Reed's manager of the NMG testified the supervisor job "involved him having to be on the floor to manage—to supervise—quite a bit"; Nissan's corporate representative testified NMG supervisors had to be "working on the floor" up to "65% of the time"; and, indeed, Reed himself testified the job required standing and "continuously walking." Blissett Dep. [45-3] at 25:1-26:25; Hall Dep. [45-4] at 68:19-69:25; Reed Dep. [45-1] at 224:8.

12

Reed does not suggest any accommodations that Nissan could have provided to enable him to perform his duties *as a supervisor*. In such cases, "when no reasonable accommodation can be made to plaintiff's prior job, he may be transferred to another position." *Jenkins v. Cleco Power LLC*, 487 F.3d 309, 315 (5th Cir. 2007). Reed therefore requested Nissan either: (1) assign him to an "Assistant Supervisor" position that would not require more walking or standing than his medical restrictions allowed; or (2) place him in an "engineering or other desk job." [45] at 6; [45-1] at 262:7-10.

But Nissan contends, and Reed does not dispute, that "such an 'Assistant Supervisor' position does not exist." [45] at 22. Nissan need not create a new position as an accommodation. *See Foreman v. Babcock & Wilcox Co.*, 117 F.3d 800, 810 (5th Cir. 1997). So the only remaining question is whether Nissan failed to accommodate Reed by not placing him in a vacant position for which he was qualified and requested, such as an "engineering or other desk job." [48] at 10; [45-1] at 262:7-10.

Reed applied but was not chosen for nine positions between February 2017 and June 2018. While the ADA does not require employers to give disabled individuals "priority in hiring or reassignment over those who are not disabled," *Daugherty v. City of El Paso*, 56 F.3d 695, 700 (5th Cir. 1995), it does require employers to allow disabled individuals to "compete equally" for vacant roles. *See Equal Emp. Opportunity Comm'n v. Methodist Hosps. of Dallas*, No. 3:15-CV-3104-

G, 2017 WL 930923, at *2 (N.D. Tex. Mar. 9, 2017) (citing *Equal Emp. Opportunity Comm'n v. St. Joseph's Hosp., Inc.*, 842 F.3d 1333 (11th Cir. 2016)).

Nissan suggests several legitimate, nondiscriminatory reasons as to why it passed over Reed for certain positions. According to Nissan, Reed applied too late ("[Reed] . . . applied [after] an offer had already been extended to [another applicant]"); applied as an "internal" candidate when an "external" candidate was selected ("None of the candidates sent on the initial internal list were selected . . ."); did not possess the desired qualifications ("[Reed] was not considered . . . because he did not meet the preferred qualifications" for Business Engineering Analyst); or failed to appear for an interview altogether ("[Reed] was a no call/no show for the interview . . . hiring manager sent [Reed] an e-mail stating [he] did not show up. [Reed] never responded to that email."). Ex. 13 to Davis Dep. [45-2] at 27, 29, 31, 37.

The burden therefore shifts back to Reed to show Nissan's stated reasons were pretext for disability discrimination. This Court finds Reed presents enough evidence that, when viewed in the light most favorable to Reed, creates a fact question over whether Nissan enabled him to "compete equally" for all positions for which he applied. *Methodist Hosps. of Dallas*, No. 3:15-CV-3104-G, 2017 WL 930923, at *2. For example, as to Nissan's contention that Reed "no show[ed]" for one interview, Reed responds that he "never received notice" Nissan had scheduled it, and Nissan's corporate representative admitted a "possible explanation" for his failure to appear was that he "did not have access to his Nissan e-mail" while on leave. [45-2] at 294:5-23. And as to Nissan's reasoning that Reed applied too late to

14

be considered for another position, Reed responds that, in fact, Nissan interviewed
and ultimately hired the successful candidate almost a month *after* receiving Reed's
application. [48] at 17. This, taken together with the former human resources
manager's testimony that it was "Nissan's practice" to keep employees home "until
they could return to work full duty without restrictions," provides sufficient
circumstantial evidence that Reed's disability was a factor in Nissan's decision-
making process. [48] at 12 (citing Garner Dep. [48-6] at 33-34).

Because Reed presents sufficient evidence to create a factual dispute over
Nissan's failure to provide reasonable accommodations by allowing him to compete
equally for the vacant positions, the Court denies summary judgment as to Reed's
disability discrimination claim.

B.  Retaliation under the ADA

The ADA also prohibits an employer from "discriminat[ing] against any
individual because such individual has opposed any act or practice made unlawful
by [the ADA] or because such individual made a charge, testified, assisted, or
participated in any manner in an investigation, proceeding, or hearing under [the
ADA]." 42 U.S.C. § 12203(a). To establish a prima facie case of retaliation under the
ADA, Reed must show: "(1) [he] engaged in an activity protected by the ADA; (2)
[he] suffered an adverse employment action; and (3) there is a causal connection
between the protected activity and the adverse employment action." *Lyons v. Katy
Indep. Sch. Dist.*, 964 F.3d 298, 304 (5th Cir. 2020) (citing *Nall v. BNSF Ry. Co.*, 917
F.3d 335, 349 (5th Cir. 2019)). To show a "causal connection," he must demonstrate

Nissan's decision was "based in part on knowledge of the employee's protected activity." *Medina v. Ramsey Steel Co.*, 238 F.3d 674, 684 (5th Cir. 2001) (quoting *Sherrod v. Am. Airlines, Inc.*, 132 F.3d 1112, 1122 (5th Cir. 1998)).

Reed maintains that Nissan "refused to return [him] to work and/or reassign[] [him] to another position" until he could "return with no restrictions" or "need for accommodation," and "failed to consider [him] for reassignment to vacant positions which he was qualified to fill" in retaliation for filing his EEOC Charge [48] at 18; [1] at 52. Nissan does not contest Reed's filing his December 29, 2016 Charge of Discrimination or his requests for accommodation were "protected activities." [45] at 23.

Reed presents enough evidence to create a fact question on his ADA retaliation claim. Nissan asserts its "detailed records of Plaintiff's applications" provide "clear evidence" that it "considered" his applications. [45] at 23. It also contends "Plaintiff's only evidence that he was not 'considered' appears to be that he was not chosen." *Id.* at 24. But this is not an accurate representation of what Nissan's "detailed records of [Reed's] applications" contain. In fact, on five of the nine position records, Nissan responds to the "*Was Charging Party Considered for This Position?*" section with, "[Reed] was not considered for this position because . . . ," "His application was not reviewed because . . .," and the like. [45-2] at Ex. 13. Because of this, along with the reasons already discussed in the Court's failure-to-reassign analysis above, *see supra*, Section III(A)(2)(c), the Court denies summary judgment on Reed's retaliation claim under the ADA.

16

C.  Race Discrimination

Reed also alleges Nissan "failed to consider [him] for vacant positions . . .

because of his race" in violation of 42 U.S.C. § 1981. [1], ¶ 68. He says Nissan "gave

better treatment to less qualified persons outside of Reed's protected race." *Id.*, ¶ 69.

Nissan responds that for the same reasons it believes Reed cannot prove disability

discrimination (*i.e.*, Nissan did "consider" his applications but chose other

applicants based on their better qualifications or Reed's incorrect application

procedures), Reed "cannot show he was not selected because of his race." [45] at 27.

To make out a prima facie case of race discrimination under § 1981, Reed

must show: (1) he is a member of a protected class; (2) he is qualified for the position

or positions for which he applied; (3) he suffered an adverse employment action, and

(4) he was replaced with a person who is not a member of the protected class.

*Pegram v. Honeywell, Inc.*, 361 F.3d 272, 281 (5th Cir. 2004) (citing *Bauer v.

Albemarle Corp.*, 169 F.3d 962, 966 (5th Cir. 1999)).

Historically, "the summary-judgment test for discrimination claims under §

1981 . . . [has been] the same test for discrimination claims under Title VII." *Patel v.

Midland Mem'l Hosp. & Med. Ctr.*, 298 F.3d 333, 342 (5th Cir. 2002) (citing *Pratt v.

City of Houston*, 247 F.3d 601, 605 n. 1 (5th Cir. 2001)). But the United States

Supreme Court has recently clarified that § 1981 claimants must meet the more

stringent "but-for causation requirement" of traditional tort actions. *Comcast Corp.

v. Nat'l Ass'n of Afr. Am.-Owned Media*, 140 S. Ct. 1009, 1018 (2020). In other

words, Reed cannot sustain his § 1981 claim merely by demonstrating race was a

"motivating factor;" he must prove Nissan's challenged actions "were taken 'on account of' or 'by reason of'" Reed's minority status as an African American. *Id.* at 1016 (citing *Gross v. FBL Financial Services, Inc.*, 557 U.S. 167 (2009)).

Both Parties agree that, of the nine positions Reed applied for, Nissan filled two with minority applicants. [45] at 27; [48] at 17. Reed therefore cannot make a prima facie case of race discrimination as to the "Industrial Engineer Manager" or "Engineer 2" positions, as he fails meet the fourth element (replacement with a non-member of the protected class).

Even if Reed meets his prima facie case on the other seven positions, Nissan suggests the same legitimate, non-discriminatory reasons for passing over Reed's applications as discussed in the Court's failure-to-reassign analysis above, *see supra*, Section III(A)(2)(c). Reed's prima facie case therefore "dissolves, and [he] must establish that the employer's reason was . . . pretext . . . or incomplete in that race was still a factor in the decision." *Reilly v. TXU Corp.*, 271 F. App'x 375, 380 (5th Cir. 2008). Here, unlike his disability discrimination claim, Reed has presented no evidence that race was a factor in Nissan's decision-making process. Nor does Reed suggest Nissan subjected him to different or more stringent requirements than any non-minority applicant for the same positions. This Court therefore grants summary judgment as to Reed's § 1981 race discrimination claim.

D.  Discrimination under the ADEA

Finally, Reed alleges Nissan subjected him to disparate treatment when it placed him on leave and failed to reinstate him in "several positions" in favor of

"younger applicants." [48] at 15-16. In response, Nissan contends that even if its employment decision were motivated in part by Reed's walking restriction "*and because of his age*," Reed's prima facie case of age discrimination fails because he cannot demonstrate his "age was *the* reason" for Nissan's placing him on leave and failing to reinstate him. [45] at 25-26. And, Nissan says, Reed cannot overcome the "inference that age was not the reason" for an adverse employment action when the management and HR team who placed Reed in the NMG still held their same positions when Reed went out on leave. *Id.* at 25 (citing *Lamb v. Booneville Sch. Dist.*, No. 108-cv-254-SA-JAD, 2010 WL 457576, at *5 (N.D. Miss. Feb. 3, 2010); *Brown v. CSC Logic, Inc.*, 82 F.3d 651 (5th Cir. 1996)). This Court agrees.

The ADEA makes it unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age . . . ." 29 U.S.C. § 623(a)(1). To make out a prima facie case of discrimination based on age, Reed must show: (1) he is within the protected class — at least 40 years old; (2) he is qualified for the position; (3) he suffered an adverse employment decision; and (4) he was replaced by someone younger or treated less favorably than a similarly situated younger employee. *Smith v. City of Jackson, Miss.*, 351 F.3d 183, 196 (5th Cir. 2003) (citing *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 (5th Cir. 2002)). Reed is over 40 years old and therefore falls into the protected class.

When, as here, a plaintiff alleges a disparate treatment claim under the ADEA, he must prove "age was the 'but-for' cause of the employer's adverse

19

decision." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009). In other words, age must be "*the* 'reason' that the employer decided to act." *Id.* (emphasis in original). "Plaintiff's ADEA claim will necessarily fail if the summary judgment evidence merely shows that age was a motivating factor" in Nissan's placing him on leave and not reinstating him. *Moss v. BMC Software, Inc.*, 610 F.3d 917, 922 (5th Cir. 2010).

Reed fails to prove his age was *the* "but-for" reason for Nissan's decision to pass over him in favor of other applicants. Instead, Reed simply argues that through discovery and during cross-examination (without citations to the record showing which cross-examination Reed is referring to), Nissan provided inconsistent explanations for passing him over. *See* [48] at 17 ("As a pretext, Nissan said Reed was not considered because he applied . . . 6 months after the requisition closed. On cross-examination, Nissan admitted that job was re-posted . . . .").

But "even if the inconsistent explanation is probative of pretext," this does not, "in light of the 'same actor inference,' create a requisite material fact issue" in an age discrimination case. *Lamb*, 2010 WL 457576, at *5 (citing *Brown*, 82 F.3d at 651); *see also West v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 385 (5th Cir. 2003) ("It is possible for a plaintiff's evidence to permit a tenuous inference of pretext yet be insufficient to support a reasonable inference of discrimination."). Nissan points out—and Reed does not contest—that "when the same individuals are responsible for [placing] and [removing] an individual, who was already a member of the ADEA-protected class when hired, 'there is an inference that age was not the reason'" for

the alleged adverse action. *Lamb*, No. 108-cv-254-SA-JAD, 2010 WL 457576, at *5 (citing *Brown*, 82 F.3d at 658 ("[c]laims that employer animus exists in termination but not in hiring seem irrational. From the standpoint of the putative discriminator, [i]t hardly makes sense to hire workers from a group one dislikes . . . only to fire them once they are on the job.") (internal quotations omitted)).

Nissan presents undisputed evidence that the same manager and senior manager supervised Reed from 2014—the time he was placed in the NMG—to 2016—the time he went on leave. [45] at 25. Reed does not respond to this, nor does he present evidence that his age was *the* reason for Nissan's decisions. Under these circumstances, an inference exists that Reed's non-placement was not motivated by age discrimination. Considering the evidence as a whole, this Court grants summary judgment on Reed's ADEA claim.

IV.    Conclusion

The Court has considered all arguments. Those the Court does not address would not have changed the outcome. For the reasons stated, the Court GRANTS in part and DENIES in part Nissan's Motion for Summary Judgment [44]. The Court also DENIES Reed's Motion to Strike Defendant's Oversized Brief [51]. The substance of Nissan's summary judgment briefing does not exceed 35 pages.

SO ORDERED AND ADJUDGED this the 10th day of May, 2021.

s/ *Kristi H. Johnson*
UNITED STATES DISTRICT JUDGE